FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 1 7 2025

TAMMY DOWNS, CLERK

By:_____
DEP CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

**JUST EMERSON**                                                                      **PLAINTIFF**

**v.**                                    Case No.: 3:25cv-0055-BSM

**ARKANSAS STATE UNIVERSITY,**
**ZACH TATE, MARCY WALLACE,**
**LORI WINN, KATRINA WATSON, DR.**
**CHERISSE JONES-BRANCH, DR.**
**KATHERINE BAKER, LEAH**
**SCHROEDER, ANDY THRASHER, and**
**RANDY MARTIN in their Individual**
**Capacities**                                                                       **DEFENDANTS**

### COMPLAINT

Plaintiff Just Emerson ("Plaintiff" or "Emerson") brings this action against Defendants Arkansas State University, Zach Tate, Marcy Wallace, Lori Winn, Katrina Watson, Dr. Cherisse Jones-Branch, Dr. Katherine Baker, Leah Schroeder, Officer Andy Thrasher, and Police Chief Randy Martin in their Individual Capacities (collectively, "Defendants").

### I.    INTRODUCTION

1.     Plaintiff was employed by Arkansas State University ("ASU") as its ceramics studio technician until July 20, 2024. Plaintiff was subject to malicious prosecution, defamation, invasion of privacy, abuse of process, intentional and negligent infliction of emotional distress or outrage, and constructive discharge.

2.     Plaintiff brings claims against all Defendants under 42 U.S.C. § 1983 for violations of Emerson's Fourth Amendment rights for malicious prosecution and abuse of process, and his Fourteenth Amendment rights to equal protection under the United States Constitution.

3.     Plaintiff brings claims against all Defendants, under 42 U.S.C. § 1985 for public

1

This case assigned to District Judge_Miller_
and to Magistrate Judge_Harris_

disclosure of private facts and intentional infliction of emotional distress or outrage.

4.      Plaintiff brings claims against all Defendants for defamation, invasion of privacy, and negligent infliction of emotional distress or outrage, and violation of AR Code § 25-19-105 (2024).

5.      Plaintiff additionally brings a claim against Defendant ASU for constructive discharge.

6.      Plaintiff seeks relief under 42 U.S.C. § 1988 in this action.

## II.    PARTIES

7.      Plaintiff is a United States Citizen, 41 years old, and at all times relevant to the allegations in this Complaint and currently, is a resident of the State of Arkansas.  Plaintiff worked for Defendant ASU until July 20, 2024 as its ceramics studio technician in its Arts Department within ASU's School of Arts & Design.

8.      At all times relevant to this Complaint, Plaintiff was employed by ASU or was a former employee of ASU.  His annual salary was $40,000 per annum based on a nine-month contract.

9.      Defendant ASU is a state university that exists under the laws of the State of Arkansas.

10.     At all times relevant to this Complaint Defendant Zach Tate was an Assistant Professor of Ceramics at Defendant ASU and is a citizen and resident of the State of Arkansas.

11.     At all times relevant to this Complaint, Defendant Marcy Wallace was a former student at ASU, and upon information and belief is a citizen and resident of the State of Arkansas.

12.     At all times relevant to this Complaint, Defendant Lori Winn was the Associate Vice Chancellor for Human Resources & Administration for Defendant ASU and is a citizen and

resident of the State of Arkansas.

13.     At all times relevant to this Complaint, Defendant Katrina Watson was the Employee Services Coordinator for Defendant ASU and is a citizen and resident of the State of Arkansas.

14.     At all times relevant to this Complaint, Defendant Dr. Cherisse Jones-Branch was the Dean of Liberal Arts & Communication, and Professor of History for Defendant ASU and is a citizen and resident of the State of Arkansas.

15.     At all times relevant to this Complaint, Defendant Dr. Katherine Baker was the Department Chair and an Associate Professor of Art History for Defendant ASU and is a citizen and resident of the State of Arkansas.

16.     Defendant Leah Schroeder is a citizen and resident of the State of Arkansas.

17.     At all times relevant to this Complaint, Officer Andy Thrasher was employed as a police officer for Defendant ASU and is a citizen and resident of the State of Arkansas.

18.     At all times relevant to this Complaint, Chief Randy Martin, was Chief of Police for Defendant ASU, had legal authority over Defendant Andy Thrasher, and is a citizen and resident of the State of Arkansas.

### III.    JURISDICTION AND VENUE

19.     This Court has jurisdiction over Emerson's claims pursuant to 42 U.S.C. §1983, 42 U.S.C. § 1985, 42 U.S.C. § 1988, 28 U.S.C. § 1331, and 28 U.S.C. § 1367.

20.     Venue in this Court is proper pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985, and 28 U.S.C. § 1391(b)(2) (Fourth and Fourteenth Amendments), because the unlawful and unconstitutional practices occurred in this judicial district.

## IV.    EXHAUSTION OF REMEDIES AND TIMELINESS

21.    There is no administrative exhaustion requirement for federal statutory law claims, Emerson's Fourth Amendment and Fourteenth Amendment Equal Protection violation claims or his pendant state law claims.

## V.    FACTS COMMON TO ALL COUNTS

### *Donation of Pottery Wheels to Plaintiff*

22.    In April 2024, Plaintiff came to understand that the ceramics studio in which he was employed would be disposing of old art equipment and replacing it with new equipment.  On or about April 24, 2024, at approximately 2:12 PM, Plaintiff in accordance with policy at ASU sent an email to James Riles, ASU's Fiscal Support Supervisor for Property Accounting ("Riles"), with the images of three (3) used pottery wheels that Plaintiff requested to be donated to him, referencing the information at the bottom half of a donation proposal letter as "unchanged," and stating, "If I need to do anything else to get this going, please let me know."

23.    At all times relevant to this Complaint, Plaintiff was never informed of any ASU requirement that a signature from the appropriate Dean of the involved college was necessary for the donation of the three (3) used pottery wheels.  Given Plaintiff's communications with Riles, Plaintiff had no reason to believe that ASU required such clearance.

24.    On or about April 29, 2024, at approximately 9:59 AM, Plaintiff sent an email to Riles regarding the status of the donation of the three (3) used pottery wheels.

25.    On or about May 7, 2024, at approximately 9:06 AM, Riles sent an update on the donation of the three (3) used pottery wheels.

26.    On or about May 8, 2024, at approximately 7:30 AM, Riles sent an email to Emerson notifying him that the three (3) used pottery wheels were successfully donated to the

4

joint venture of Plaintiff and his fiancée (now wife) engaged in artistic design ("Boo & Finni").

*Conspiracy Against Plaintiff resulting in his Constructive Discharge from ASU*

27.    On or about July 9, 2024, at approximately 12:02 PM, Plaintiff sent an email to Dr. Katherine Baker ("Defendant Baker") about setting up a meeting at some point to discuss plans for the ceramics studio for future semesters.

28.    Between July 1, 2024, and July 17, 2024, upon information and belief, Zach Tate ("Defendant Tate") and his wife Leah Schroeder ("Defendant Schroeder") began preparation to purchase a building located at 304 Gee Street in Jonesboro, Arkansas for their own arts venture, Open Studio, which was intended to be a retail crafts store.  On information and belief, Defendant Tate and Defendant Schroeder viewed Boo & Finni as a business competitor.

29.    On or about July 18, 2024, at approximately 10:00 AM, Defendant Tate and Plaintiff began communicating via text message about the three (3) used pottery wheels from excess equipment that were donated to Boo & Finni. Tate expressed his displeasure as to Plaintiff's donation request.  Immediately afterwards, Defendant Tate contacted ASU Human Resources and Defendant Baker, more likely than not believing that Plaintiff had illegally absconded with the three (3) pottery wheels that he wanted for the retail crafts store that he was opening with his wife, Defendant Schroeder.

30.    On or about July 18, 2024, at approximately 1:19 PM, Defendant Tate sent an email to Plaintiff asking if he had the donation forms.

31.    On or about July 18, 2024, at approximately 1:20 PM, Plaintiff sent Defendant Tate an email with the donation forms and information regarding the process.

32.    On or about July 18, 2024, at approximately 1:22 PM, Defendant Tate sent an email to Riles asking for the paperwork involved in the donation.

33.     On or about July 18, 2024, at approximately 3:28 PM, Riles responded to Defendant Tate with the letter that was sent to marketing and redistribution for approval, stating, "once approved by them, I gave [Plaintiff] the go ahead and donated the items in question."

34.     On or about July 18, 2024, at approximately 12:00 noon, Plaintiff met with Defendant Baker about the upcoming semester's events, the issue Defendant Tate was having with the donation of three (3) used pottery wheels raised by Defendant Tate, and how to resolve that issue.

35.     On or about July 19, 2024, at approximately 9:10 AM, ASU Human Resources contacted Plaintiff requesting an in-person meeting with Defendant Winn, Defendant Watson, and Plaintiff, to discuss the donation of the three (3) used pottery wheels, conflicts of interest arising from that donation, and possible termination of Plaintiff's employment at ASU.

36.     On or about July 19, 2024, at approximately 10:37 AM following the meeting, Plaintiff sent an email to Defendant Baker stating, "I am bringing the wheels back to the school."

37.     On or about July 19, 2024, at approximately 10:39 AM, Defendant Baker responded to Plaintiff stating, "Thank you for the update."

38.     On or about July 19, 2024, at approximately 10:42 AM, Plaintiff sent an email to Defendant Tate stating, "So it turns out there is a conflict of interest with the donation of the wheels and I am returning them to the school."

39.     On or about July 19, 2024, at approximately 11:16 AM, Plaintiff emailed Defendant Winn that the three (3) used pottery wheels had been returned to the ASU ceramics studio, attaching images of the wheels with their corresponding serial numbers.

40.     On or about July 19, 2024, at approximately 12:41 PM, Defendant Winn, Defendant Baker, and Defendant Watson responded stating, "I did receive your email today, indicating the

wheels were returned and am seeking verification from Katherine Baker."

41.    Upon information and belief, Defendant Baker and Defendant Winn were informed of the return.

42.    On or about July 19, 2024, at approximately 12:57 PM, Plaintiff responded to Defendant Winn stating, "I will update everything on the conflict-of-interest forms."

43.    On or about July 19, 2024, at approximately 2:35 PM, Plaintiff emailed Defendant Baker and Dr. Cherisse Jones-Branch ("Defendant Jones") with an updated potential conflict of interest form.

44.    On or about July 19, 2024, at approximately 2:40 PM, Plaintiff emailed Defendant Baker asking, "Is there any way for me to look at my contract?" to ascertain exactly what was a conflict of interest and what was not.

45.    On or about July 19, 2024, at approximately 3:12 PM, Defendant Baker and Defendant Jones-Branch responded to Plaintiff's email regarding his prior proposal of hosting of a cup auction and donating the money specifically to the ASU ceramics program, all in reference to a previous meeting in which Plaintiff suggested and offered to host a cup auction at ASU.

46.    However, Plaintiff's suggestion was never formalized as he was informed that any money raised by an auction on the ASU campus would be distributed throughout the whole art department, and would not go specifically to ceramics.  Thus, Plaintiff decided not to host such an event through Defendant ASU.

47.    Instead, Plaintiff decided to host the cup auction at a later date outside of Defendant ASU during his own personal time, to raise money for a specific cause, without any help or support from Defendant ASU.

48.    On or about July 19, 2024, at approximately 3:15 PM, Defendant Baker responded

to Plaintiff's 2:40 PM email regarding his employment contract, stating "I can get you the letter on Monday that follows the dictates of job postings."

49.     On or about July 19, 2024, at approximately 3:39 PM, Plaintiff responded to Defendant Baker and Defendant Jones-Branch regarding the cup auction stating, "If there is anything else I need to include or clarify, please let me know."

50.     On or about July 19, 2024, at approximately 7:35 PM, Plaintiff emailed Defendant Baker and Defendant Jones-Branch stating his desire to remain in his position, but the discussion with ASU Human Resources demonstrated that he was being treated unfairly with regard to the boundaries with his position and potential conflicts of interest.  Further, Plaintiff expressed his concern about the status of his position and whether or not he needed to consider looking for another job as he just bought a house and it is his main source of income.

51.     On or about July 20, 2024, at approximately 9:09 AM, Plaintiff emailed his resignation letter to Defendant Baker, Defendant Jones-Branch and Defendant Winn, stating that he would be leaving despite loving his job, and indicated that he knew he could no longer work at ASU given the treatment he endured, including conflict of interest conditions brought up for the first time by Defendant Winn and Defendant Watson, as well as Defendant Tate's vindictive reaction to the donation of three (3) used pottery wheels to Boo & Finni.

52.     Plaintiff further indicated that "I will have my office, and all my belongings, cleared out by Wednesday the 24th. If you need me to be off the property sooner please let me know. I will begin moving out this afternoon."

53.     On or about July 20, 2024, at approximately 3:00 PM, Plaintiff and his fiancée (now wife) began moving out of the Windgate Center for Three-Dimensional Arts which housed the ceramics studio (the "Windgate 3-D Building") on the campus of ASU.

54.     On or about July 20, 2024, at approximately 8:45 PM, Plaintiff texted Jessica Lambert, a former sculpture professor at ASU who had also recently resigned from ASU about a table she left behind, and asked if he could have it to use at a possible clay design center he wanted to open.

55.     On or about July 21, 2024, at approximately 10:00 AM, Plaintiff continued moving his belongings out of the Windgate 3-D Building without any issues and without anyone from faculty, campus security, or students coming by to check out the premises.

56.     On or about July 21, 2024, at approximately 7:32 PM, Plaintiff texted Philip Ladd ("Ladd"), Facilities Manager at ASU, and informed him that he had resigned over the weekend and was almost all moved out of the building and expressed that it was nice working with him.

57.     On or about July 22, 2024, at approximately 5:22 AM, Plaintiff emailed Defendant Baker, Defendant Jones-Branch ,and Defendant Winn to inform them that he was almost all moved out and would continue moving out throughout the day.

58.     Plaintiff continued to remove the last of his belongings into the afternoon, and he later informed Defendant Baker, Defendant Jones-Branch and Defendant Winn that he would be moving out over the weekend and into the following week.

59.     At no time while Plaintiff moved his belongings out did any personnel from ASU or anyone else come to check on anything throughout the process.

60.     On or about July 22,· 2024, at approximately 10:05 AM, Defendant Baker, Defendant Jones-Branch, and Defendant Winn formally received Plaintiff's reluctant decision to part ways with ASU, with Plaintiff feeling he had no other choice.

61.     On or about July 22,· 2024, at approximately 11:06 AM, Plaintiff emailed Defendant Baker, Defendant Jones-Branch, and Defendant Winn to notify them that he had

returned his key to ASU's facilities staff.

62.     On or about July 22, 2024, at approximately 12:19 PM, Defendant Winn emailed Defendant Baker, Defendant Jones-Branch, and Plaintiff, requesting that Defendant Baker begin the process of terminating Plaintiff's employment.

63.     On or about July 22, 2024, at approximately 12:41 PM, Defendant Baker responded to Defendant Baker, Defendant Jones-Branch, and Plaintiff, stating "I will complete that now."

64.     On or about July 22, 2024, at approximately 12:45 PM, Defendant Baker emailed Plaintiff asking Plaintiff to confirm that the following tasks on the "attached screenshot" had been completed.

65.     On or about July 22, 2024, at approximately 12:51 PM, Plaintiff responded to Defendant Baker's 12:45 PM email stating "One, three and four are done. I'm not sure what it means to submit leave time."

66.     On or about July 22, 2024, at approximately 12:55 PM, Defendant Baker responded to Plaintiff's 12:51 PM email stating "thanks, number one was the clutch question."

67.     On or about July 22, 2024, at approximately 1:01 PM, Plaintiff emailed Defendant Baker images of his Office and studio with his belongings cleared out.

68.     On or about July 22, 2024 at approximately 2:16 PM, Defendant Winn emailed Plaintiff with regards to his resignation letter, questioning his meaning of "hostile work environment" and how it related to his experience with Defendant Tate.

69.     Upon information and belief, Defendant Winn sought to communicate to Plaintiff that his experience of suffering a hostile work environment did not align with ASU's Human Resources' subjective view of what constituted a hostile work environment.

70.     On or about July 22, 2024, at approximately 3:11 PM, Plaintiff, along with his then

fiancée (now wife), and Myra Goodwyn, Amber Jones and Defendant Baker, corresponded for one another about what constituted "property" under policies the enforced by ASU.

71.    This was the only procedure which Plaintiff was required to complete prior to exiting ASU.

72.    At no time did any personnel or officials from ASU contact Plaintiff to ensure or verify that all property of ASU was accounted for.

73.    Upon information and belief, had anyone from ASU conducted an inventory, this would have verified that Plaintiff had not taken any property from ASU.

74.    On or about July 22, 2024, at approximately 3:26 PM Plaintiff responded to Defendants Baker, Jones-Branch, Winn, and Watson, stating "I would no longer associate myself with the kind of behavior exhibited by Zach Tate and I could not continue to do my job effectively because of it." Immediately afterwards, Plaintiff lost access to his ASU email account.

*Defendants' Conduct Causing Plaintiff to be Falsely Accused, Detained, Arrested, and Charged*

75.    Much to the chagrin of Defendant Tate and Defendant Schroeder, on or about July 23, 2024, Plaintiff and his wife announced through their social media accounts that Boo & Finni was going to open as a clay design center on Gee Street in Jonesboro, Arkansas.

76.    On information and belief, Defendant Tate and Defendant Schroeder were incensed about the opening of Boo & Finni. Realizing that their campaign of hostility did not bury Plaintiff and his fledgling clay design arts venture, Defendant Tate and Defendant Schroeder upped the ante. On information and belief, between July 24-26, 2024, Defendant Tate and Defendant Schroeder together decided that they would cause to create a false list of "missing items" claimed to have been stolen by Plaintiff and file a police report. The objective of this malevolent scheme was to accuse Plaintiff of theft so that his fledgling business, and likely his career in the arts in

educational settings, would be destroyed.  Defendant Tate enlisted Defendant Marcy Wallace ("Defendant Wallace") to assist in their fiendish plot.

77.    In furtherance of the scheme, Defendant Tate suggested to law enforcement personnel at ASU that they view camera footage from July 19, 2024 through July 21, 2024, which was when Plaintiff was moving out of the ASU ceramics studio.  Of course, Defendant Tate and likely other Defendants knew or were provided notice that during that time frame, Plaintiff was in fact moving out of the ceramics studio.

78.    On or about July 29, 2024, Defendant Winn contacted the ASU police department about a theft of three (3) used pottery wheels with knowledge that such property had been returned, as well as several other items from Defendants Tate and Wallace's concocted "stolen" property list.

79.    Thereafter, officers of the ASU police department were notified of an alleged theft of property from the Windgate 3-D Building on the ASU campus.

80.    Defendant Tate stated to the ASU police department that a full inventory of durable items had been "observed" in the ceramics department and that certain other items were missing. These items were subjectively of little or no value at all, but assigned a high value by Defendant Tate and Defendant Wallace so that Plaintiff could be charged with felony theft.

81.    On or about July 30, 2024, ASU Police Officer Ryan Smith ("Smith") was dispatched to ASU Human Resources.  Smith reported that Defendant Winn stated "Just Emerson was asked to return some pottery wheels. Instead of returning the wheels, he resigned." However, this statement was false because (a) Emerson had returned the three (3) used pottery wheels weeks ago and (b) his resignation had nothing to with the alleged theft of pottery wheels but instead the vindictive, hostile behavior by Defendant Tate.

82.    Defendant Officer Andy Thrasher ("Defendant Thrasher") caused to make an official report with Defendant Winn.

83.    On or about July 31, 2024, Defendant Winn called Scott McDaniel ("McDaniel") to ask if the scrap wood and steel from the ceramics studio was donated to either ASU or Boo & Finni. Defendant Winn was told by McDaniel that it was a donation to Boo & Finni.

84.    Defendants Winn, Tate, and Baker took no steps whatsoever nor did any due diligence to confirm the validity of the donated property as "stolen" before actually reporting it as stolen to law enforcement. Instead, even after confirming that said scrap wood and steel were not stolen, but in fact belonged to Plaintiff, they nonetheless continued to institute criminal action against Plaintiff.

85.    On or about August 12, 2024, a probable cause affidavit was sworn out against Plaintiff, alleging that he committed theft of $2,984.12 worth of items as well as three (3) used pottery wheels from ASU.

86.    On or about Aug 12, 2024, at approximately 2:00 PM, Defendant Thrasher arrived at Plaintiff's home, with a warrant for Plaintiff's arrest for theft at ASU. Plaintiff was handcuffed, arrested and taken to the Craighead County Detention Center.

87.    On or about August 13, 2024, at approximately 2:01 PM, Plaintiff's fiancée (now wife) contacted Defendant Baker to inquire about why Plaintiff had been arrested, and Defendant Baker told her to contact Defendant Winn. Upon Plaintiff's fiancée (now wife) contacting Defendant Winn, Defendant Winn would not discuss the arrest. However, Defendant Winn provided Plaintiff's fiancée (now wife) with Plaintiff's personnel file without Plaintiff's knowledge or consent, and without requiring any proof of identification from Plaintiff's wife. At this time, Defendant Winn was unaware of the relationship between Plaintiff and his fiancée (now

13

wife) as they were not yet married.

88.   On or about August 13, 2024, at approximately 9:32 AM, Defendant Thrasher filed a report after the fact, indicating that after review of camera footage, stating that "on 7/19 subject #1 (Just Emerson) *returns three pottery wheels.*" Thrasher also confirmed that *"some of the items did in fact belong to Just Emerson."* (emphasis added)

89.   On or about August 14, 2024, Plaintiff was released between 3:45 PM to 4:00 PM on $3,500 bond.

90.   Nonetheless, the story of the alleged theft at ASU was broadcast all over the local news stations, newspapers, social media outlets, and radio as fact, including false information provided by ASU about Plaintiff, including his name and likeness.

91.   On or about August 15, 2024, Ladd contacted Defendant Chief Randy Martin ("Defendant Martin") to discuss his conversations with Plaintiff.

92.   On or about September. 12, 2024, Plaintiff was charged with a felony of one count of Theft of Property Value < $1,000 but =<$5,000, Ark. Code Ann. § 5-36-103(b)(3)(A) by information for the alleged theft at ASU.

93.   On or about October 7, 2024, McDaniel submitted a sworn affidavit that *all* donation materials were given to Plaintiff and *none* of the material was donated to ASU.

94.   On or about November 14, 2024, Craighead County Prosecuting Attorney Sonia F. Hagood found no actual crime was committed and moved to dismiss all charges against Plaintiff and the same was granted by Circuit Judge Barbara Halsey, resulting in all charges against Plaintiff being dropped.

95.   Nonetheless, Plaintiff continues to deal with the needless, wanton and reprehensible smear to his good name and reputation.  His charge of a felony theft now follows him wherever he

14

goes, making prospective employment in educational settings virtually impossible. The charge shows up on routine background checks. And even in 2025, Boo & Finni's social media posts are littered with posts of Plaintiff's mugshot.

## CAUSES OF ACTION

### COUNT I: MALICIOUS PROSECUTION

96.     Paragraphs 1-95 are realleged and incorporated herein by reference. To the extent required by law, this cause of action is pleaded in the alternative.

97.     Defendants acted under color of law and in the performance of official duties under the authority of ASU and the state of Arkansas, and engaged in a conspiracy to deprive Plaintiff of his civil rights.

98.     Defendants caused criminal proceedings to be initiated against Plaintiff in the form of theft of $2,984.12 worth of items as well as three pottery wheels from ASU, and one count of Theft of Property Value < $1,000 but =<$5,0000 Ark. Code Ann. § 5-36-103(b)(3)(A).

99.     Said proceedings were terminated in favor of Plaintiff, as Craighead County Prosecuting Attorney Sonia F. Hagood found no actual crime was committed and moved to dismiss all charges against Plaintiff and the same was granted by Circuit Judge Barbara Halsey, resulting in all charges against Plaintiff being dropped.

100.    Defendants did not have probable cause for initiating the proceedings as there was video and documentary evidence which established that Plaintiff had not committed theft or any other crime.

101.    Defendants Tate, Schroeder, Baker, Jones-Branch and Winn, Watson, Wallace, Thrasher, and Martin, and Defendant ASU under *respondeat superior* acted with an improper or sinister motive in initiating the proceedings against Plaintiff and falsely reporting the items as

15

stolen with knowledge of said falsity and/or recklessness.

102.    Defendants' acts were a proximate cause of Plaintiff's damages.

103.    Plaintiff suffered damages as a result.

## COUNT II: DEFAMATION

104.    Paragraphs 1-103 are realleged and incorporated herein by reference. To the extent required by law, this cause of action is pleaded in the alternative.

105.    Defendants acted under color of law and in the performance of official duties under the authority of ASU and the state of Arkansas.

106.    Defendants published and caused to be published false statements of fact of and concerning Plaintiff, including but not limited to that "Just Emerson was asked to return some pottery wheels," and intimating that the pottery wheels were stolen, when in fact they had already been returned.  Defendant Winn contacted the ASU police department about an alleged theft of wheels with knowledge that such property had been returned, as well as several other items from Defendants Tate and Wallace's purported "stolen" property list.

107.    The story of the alleged and false theft at ASU, as well as Plaintiff's arrest which was directly caused by the false reports, was broadcast all over the local news stations, newspapers, social media outlets and radio, as fact, with the false information provided by ASU about Plaintiff including his name and likeness.

108.    Said statements of fact were and are defamatory as McDaniel submitted a sworn affidavit that all donation materials were given to Plaintiff and none of the material was donated to ASU.

109.    Defendants Tate, Schroeder, Baker, Jones-Branch and Winn, Watson, Wallace, Thrasher, and Martin and Defendant ASU under *respondeat superior*, acted with negligence in

16

failing to determine the truth of the statements prior to publication in that neither of the Defendants nor any ASU personnel took any steps whatsoever to inventory the property that Plaintiff was falsely accused of stealing and with knowledge the statement was false as Defendants Tate, Schroeder, Baker, Jones-Branch and Winn, Watson, Wallace, Thrasher, and Martin each knew that the property was not stolen by Plaintiff.

110.    The publication of the statement was and continues to  be a proximate cause of Plaintiff's damages.

111.    Plaintiff suffered and continues to suffer damages as a result.

## COUNT III: ABUSE OF PROCESS

112.    Paragraphs 1-111 are realleged and incorporated herein by reference.  To the extent required by law, this Cause of Action is pleaded  in the alternative.

113.    Defendants acted under color of law and in the performance of official duties under the authority of ASU and the State of Arkansas and engaged in a conspiracy to deprive Plaintiff of his civil rights.

114.    Defendants Tate, Schroeder, Baker, Jones-Branch and Winn, Watson, Wallace, Thrasher, and Martin and Defendant ASU, each under *respondeat superior*, set in motion legal proceedings directed at Plaintiff as he was charged with theft of $2,984.12 worth of items as well as three pottery wheels from ASU, and one count of Theft of Property Value < $1,000 but =<$5,0000 Ark. Code Ann. § 5-36-103(b)(3)(A).

115.    The proceeding was used to accomplish an ulterior purpose for which it was not designed, as Plaintiff suffered arrest, imprisonment, incurred attorneys' fees, and public and private humiliation, embarrassment, and severe emotional distress.

116.    Defendants willfully used process in a manner not proper in the regular conduct of

the proceeding. Craighead County Prosecuting Attorney Sonia F. Hagood found no actual crime was committed and moved to dismiss all charges against Plaintiff and the same was granted by Circuit Judge Barbara Halsey, resulting in all charges against Plaintiff being dropped.

117.    Defendants' acts were and are a proximate cause of Plaintiff's damages.

118.    Plaintiff suffered and continues to suffer damages as a result.

## COUNT IV: INVASION OF PRIVACY BY PUBLIC DISCLOSURE OF PRIVATE FACTS AND VIOLATION OF ARK. CODE § 25-19-105 (2024)

119.    Paragraphs 1-118 are realleged and incorporated herein by reference. To the extent required by law, this cause of action is pleaded in the alternative.

120.    Each of the Defendants acted under color of law and in the performance of official duties under the authority of ASU and the State of Arkansas and engaged in a conspiracy to deprive Plaintiff of his civil rights.

121.    Defendants Tate, Schroeder, Baker, Jones-Branch and Winn, Watson, Wallace, Thrasher, and Martin, and Defendant ASU, each under *respondeat superior,* made a public disclosure of a fact about Plaintiff, as the story of the alleged and false theft at ASU was broadcast all over the local news stations, newspapers, social media outlets and radio as fact with the false information provided by ASU about Plaintiff, including his name and likeness. Further, Plaintiff's personnel file was divulged to others without Plaintiff's knowledge or consent.

122.    Before this disclosure, these facts were not known to the public as Plaintiff's personnel file is private under Arkansas Code § 25-19-105 (2024) and knowledge of the alleged theft was not publicly known.

123.    A reasonable person would find disclosure of the fact highly offensive as being accused of theft.

124.    Defendants knew or should have known that the disclosed fact was private.

18

125.    The fact was not of legitimate public concern.

126.    Public disclosure of the fact was and continues to be a proximate cause of Plaintiff's damages.

127.    Plaintiff suffered and continues to suffer damages as a result.

### COUNT V: FALSE LIGHT INVASION OF PRIVACY

128.    Paragraphs 1-127 are realleged and incorporated herein by reference. To the extent required by law, this cause of action is pleaded in the alternative.

129.    Defendants acted under color of law and in the performance of official duties under the authority of ASU and the State of Arkansas.

130.    Defendants Tate, Schroeder, Baker, Jones-Branch and Winn, Watson, Wallace, Thrasher, and Martin and Defendant ASU, each under *respondeat superior*, gave publicity to a matter concerning Plaintiff that placed him before the public in a false light as Between July 24 and July 26, 2024, Defendant Tate and Defendant Wallace concocted a list of "missing items" that they falsely claimed to be stolen by Plaintiff, and Defendant Winn contacted the ASU police department about theft of pottery wheels with knowledge that such property had been returned, as well as several other items from Defendants Tate and Wallace's purported "stolen" property list.

131.    The false light in which Plaintiff was placed would cause a reasonable person to be justified in feeling seriously offended and aggrieved by the publicity.

132.    Defendants' giving of such publicity was a proximate cause of Plaintiff's damages.

133.    Defendants Tate, Schroeder, Baker, Jones-Branch and Winn, Watson, Wallace, Thrasher, and Martin and Defendant ASU, each under *respondeat superior*, published or caused to publish the false light fact, knowing it was false as they knew (a) that the property was not stolen by Plaintiff; or (b) with a high degree of awareness of its probable falsity as neither of the

19

Defendants nor any ASU personnel took any steps to inventory the property that Plaintiff was falsely accused of stealing.

134.    Defendants' acts were and are a proximate cause of Plaintiff's damages.

135.    Plaintiff suffered and continues to suffer damages as a result.

## COUNT VI: OUTRAGE

136.    Paragraphs 1-135 are realleged and incorporated herein by reference. To the extent required by law, this cause of action is pleaded in the alternative.

137.    Defendants acted under color of law and in the performance of official duties under the authority of ASU and the State of Arkansas and engaged in a conspiracy to deprive Plaintiff of his civil rights.

138.    Defendants willfully and wantonly engaged in extreme and outrageous conduct as Defendants Tate, Schroeder, Baker, Jones-Branch and Winn, Watson, Wallace, Thrasher, and Martin, and Defendant ASU, each under *respondeat superior*, knew that the property was not stolen by Plaintiff.

139.    Such conduct proximately caused damage to Plaintiff in the nature of emotional distress as Plaintiff suffered arrest, imprisonment, incurred attorneys' fees, public and private humiliation, embarrassment, and severe emotional distress. Plaintiff's embarrassment, humiliation and emotional distress caused by this conduct continues to this day.

140.    Defendants Tate, Schroeder, Baker, Jones-Branch and Winn, Watson, Wallace, Thrasher, and Martin and Defendant ASU, each under *respondeat superior*, knew or should have known in the light of surrounding circumstances that their conduct would naturally and probably result in emotional distress and continued such conduct in reckless disregard of the consequences, as Plaintiff suffered arrest, imprisonment, incurred attorneys' fees, and public and private

humiliation, embarrassment, and severe emotional distress. Plaintiff's embarrassment, humiliation and emotional distress continues to this day.

141.    Defendants' conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.

142.    Plaintiff suffered arrest, imprisonment, incurred attorneys' fees, and public and private humiliation, embarrassment, and severe emotional distress that was reasonable and justified under the circumstances and was so severe that no reasonable person could be expected to endure it. Plaintiff's embarrassment, humiliation and emotional distress continues to this day.

143.    Defendants' acts were and continue to be a proximate cause of Plaintiff's damages.

144.    Plaintiff suffered and continues to suffer damages as a result of such acts.

## COUNT VII: DENIAL OF EQUAL PROTECTION

145.    Paragraphs 1-144 are realleged and incorporated herein by reference. To the extent required by law, this cause of action is pleaded in the alternative.

146.    Defendants acted under color of law and in the performance of official duties under the authority of ASU and the State of Arkansas.

147.    Defendants Tate, Schroeder, Baker, Jones-Branch and Winn, Watson, Wallace, Thrasher, and Martin, and Defendant ASU, each under *respondeat superior*, treated Plaintiff differently from other similarly situated persons who donated property while at ASU.

148.    Defendants lacked justification for discriminating against Plaintiff, and their conduct served no important governmental objectives, and was not substantially related to achieving any important governmental objectives.

149.    As a proximate result of Defendants' actions, Plaintiff suffered and continues to

21

suffer damages.

## COUNT VIII:  CONSTRUCTIVE DISCHARGE

150.    Paragraphs 1-149 are realleged and incorporated herein by reference.  To the extent required by law, this cause of action is pleaded in the alternative.

151.    Defendants Tate, Schroeder, Baker, Jones-Branch and Winn, Watson, Wallace, Thrasher, and Martin, and Defendant ASU, each under *respondeat superior,* made or caused to make Plaintiff's working conditions intolerable insofar as they required Plaintiff to participate in a discussion of the wheel donation, its conflicts of interest and possible termination while at the same time acceding to such conduct by others.

152.    Plaintiff's actions in engaging in the pottery wheel donation was a motivating factor in the Defendant's actions.

153.    Defendants Tate, Schroeder, Baker, Jones-Branch and Winn, Watson, Wallace, Thrasher, and Martin, and Defendant ASU, each under respondeat superior, acted with the intent of forcing Plaintiff to quit.

154.    Plaintiff's resignation was a reasonably foreseeable result of the Defendants' actions.

155.    Plaintiff's working conditions were so intolerable that a reasonable person in Plaintiff's situation would have deemed resignation the only reasonable alternative, as Plaintiff resigned despite his loving his job and wanting to remain with ASU for future semesters.

156.    Defendants' acts were and continue to be proximate cause of Plaintiff's damages.

157.    Plaintiff suffered and continues to suffer damages as a result.

## VI.    JURY DEMAND

Plaintiff requests a trial by jury on all claims so triable.

22

## VII.    PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that each of the Defendants be cited to appear and answer, and that on final trial, Plaintiff have judgment against the Defendants as follows:

a.       Judgment against Defendants for actual damages, including lost wages and benefits (both past and future), the sum and allocation to be determined at trial but in an amount no less than $1 million;

b.       Judgment against Defendants for compensatory damages in the maximum amount allowed by law, including, but not limited to, mental anguish and loss of enjoyment of life;

c.       Judgment against Defendants for punitive damages in the maximum amount allowed by law of the State of Arkansas given that Defendants acted with either malice or reckless disregard to common standards of decency, each of them knowing their conduct would harm Plaintiff;

d.       An order that Defendants take such other and further actions as may be necessary to redress its violations of the laws, including, but not limited to (1) a public apology to Plaintiff and (2) injunctive relief;

e.       Pre-judgment and post-judgment interest at the maximum amount allowed by law;

f.       All costs of suit, including Plaintiff's attorneys' fees; and

g.       The award of such other and further relief to which Plaintiff may be entitled.

Respectfully Submitted,

LAW OFFICES OF ROBERT V. CORNISH, JR., PC

*/s/ Robert V. Cornish, Jr.*
ROBERT V. CORNISH, JR. (95-0116)
680 South Cache Street, Suite 100
P.O. Box 12200
Jackson, WY 83001
Office: (307) 264-0535
Email: rcornish@rcornishlaw.com

*Attorneys for Plaintiff*